IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

UNITED STATES FOR THE USE AND
BENEFIT OF STRAIGHTLINE
CORPORATION,

    Plaintiff,

v.                      CIVIL ACTION NO. 5:06-00011

AMERICAN CASUALTY COMPANY
OF READING, PA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before this court is defendant's motion for summary judgment. (Doc. No. 41.) For the following reasons, the court hereby **DENIES** this motion.

### I. Factual and Procedural History

This action involves a contract dispute between a surety and a subcontractor hired to work on the annex to the federal courthouse in Wheeling, West Virginia. (Doc. No. 42 at 1.) The owner of the courthouse, the United States General Services Administration ("the government"), entered into a construction agreement (the "prime contract") with a general contractor and construction manager, Dick Corporation ("the contractor"). (Id.) Subsequently, on April 12, 2002, the contractor entered into a subcontract with plaintiff, which provided that plaintiff would furnish and install the interior architectural woodwork in the

building.  (Id.)  In exchange, the contractor agreed to pay plaintiff $511,520.00.  (Doc. No. 12 Attach. 2 at ¶ 6.)

Plaintiff claims that during the course of the project, the contractor directed it to perform additional work that was outside the scope of the parties' original agreement.  (Id. at ¶ 7.)  According to plaintiff, it performed all such work "in a good and workmanlike manner" and with the contractor's knowledge and approval.  (Id. at ¶ 11.)  The cost and value of this additional work is allegedly $233,958.46.  (Id. at ¶ 12.)  Plaintiff claims that the contractor still owes it $232,079.76.  (Id. at ¶ 14.)

Defendant claims that plaintiff was not paid for the extra work because it was either rejected by the government as being non-conforming or as constituting extras for which plaintiff was not entitled to payment.  (Doc. No. 41 Attach. 1 at ¶ 14.)  In addition, defendant claims that plaintiff did not complete its work on schedule, and that, pursuant to the terms of the subcontract, the contractor backcharged plaintiff the cost of completing the project and assessed liquidated damages against plaintiff.  (Id. at ¶ 17-18.)  Plaintiff contends that the quality problems and delays were the contractor's fault, because the contractor misrepresented the government's wishes, mismanaged other subcontractors, or made various other mistakes.  (See generally, Doc. No. 48 Attach. 1.)

Pursuant to the Miller Act, 40 U.S.C. §§ 3131-3134, defendant and the contractor executed and delivered a payment bond to the government. (Doc. No. 12 Attach. 2 at ¶ 15.) Plaintiff seeks to recover the amount it is allegedly owed from this payment bond. (Id. at ¶ 22.) Defendant argues that it is entitled to summary judgment as a matter of law, because the subcontract between plaintiff and the contractor contains numerous provisions that preclude plaintiff from successfully raising its claims against the contractor. (Doc. No. 42 at 7.) According to defendant, it is entitled to raise any defenses the contractor could have raised against plaintiff, because it is the contractor's surety. (Id. at 6-7.)

Defendant limits its discussion to two provisions in the subcontract. First, it asserts that plaintiff is only entitled to payment from the contractor to the extent that the contractor has received payment from the government. (Id. at 8.) The subcontract states that "[r]eceipt of payment from [the government] to the Contractor for [plaintiff's] work is an absolute condition precedent to the [plaintiff's] right to payment." (Doc. No. 42 at 8 (citing Doc. No. 41 Ex. 1 at 14).) Because the contractor was not paid by the government for the work for which plaintiff is seeking payment, defendant argues that plaintiff's claims must fail. (Id. at 8-9.)

Second, defendant contends that plaintiff should have asserted its claims against the government, not the contractor, because it was the government that decided to withhold payment for the work. (Id. at 9-10.) The subcontract provides that if plaintiff has any claims for damages

> caused by the [government], other independent contractors of the [government], the Contractor, the Contractor's other subcontractors, or any other entity, the Contractor agrees to transmit to the [government], other subcontractors, or other entity any such claims submitted to it by the [Plaintiff] . . . . *The Contractor . . . merely acts as a conduit to provide the [Plaintiff] with contractual privity for access to the [government], other subcontractors, or other entity to seek reimbursement for damages incurred* . . . in no event will the Contractor be liable for the [Plaintiff]'s claims for such damages except to the extent and amount that the Contractor is actually paid therefore by the [government], other subcontractors, or other entity . . . .

(Doc. No. 41 Ex. 1 at 17 (emphasis added).) Further, relevant terms of the prime contract were incorporated into the subcontract. (Id. at 14.) According to defendant, the prime contract adopted the dispute resolution provisions contained in the Federal Acquisition Regulations, and plaintiff should have

-4-

submitted a claim against the government using its procedures.[1] (Doc. No. 42 at 10.)

This motion is now ripe for adjudication. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 40 U.S.C. §§ 3131-3134.

## II. Standard of Review

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if

---

[1] The Federal Acquisition Regulations require that "[c]ontractor claims . . . be submitted, in writing, to the contracting officer for a decision within 6 years after accrual of a claim, unless the contracting parties agreed to a shorter time period." 48 C.F.R. § 33.206. That decision can be appealed by the contractor to the Board of Contract Appeals or the contractor can bring an action directly in the United States Court of Federal Claims. See id. at § 33.211(a)(4)(v).

there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23.

### III. Analysis

Under the Miller Act, a contractor involved in the "construction, alteration, or repair of any public building or public work of the Federal Government" must post two types of bonds. 40 U.S.C. § 3131(b). First, the contractor must post a "performance bond . . . for the protection of the Government" against defaults by the contractor. Id. at § 3131(b)(1). Second, the contractor must post a "payment bond . . . for the protection of all persons supplying labor and material." Id. at § 3131(b)(2). The Miller Act gives "every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished" the right to "bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought." Id. at § 3133(b)(1).

The Miller Act "represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings." U.S. ex rel. Sherman v. Carter, 353 U.S. 210, 216 (1957). The purpose of the Miller Act is "to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and

material." Id. The Act "should receive a liberal construction to effectuate its protective purposes." Id. Because the Miller Act provides a federal cause of action, "the scope of the remedy as well as the substance of the rights created thereby is a matter of federal[,] not state law." F.D. Rich Co., Inc. v. U.S. ex rel. Indus. Lumber Co., Inc., 417 U.S. 116, 127 (1974). Thus, in contrast to a surety who provides a payment bond on a private construction project, see Moore Bros. Co. v. Brown & Root, Inc., 207 F.3d 717 (4th Cir. 2000) or pursuant to a "little Miller Act" under state law, see Wellington Power Corp. v. CNA Surety Corp., 614 S.E.2d 680 (W. Va. 2005), "the liability of a Miller Act surety is controlled by federal law because 'determination of the extent of the liability involves the construction of a federal statute, the Miller Act, under which it was created.'" U.S. ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1206 (9th Cir. 2002) (quoting Cont'l Cas. Co. v. Schaefer, 173 F.2d 5, 8 (9th Cir. 1949)). Only when construction of the Miller Act is not at issue is state law applied. See U.S. ex rel. Shields, Inc. v. Citizens & S. Nat. Bank of Atlanta, Ga., 367 F.2d 473, 477 (4th Cir. 1966).

**A. The "Pay-if-Paid" Provision**

As stated above, defendant argues that it cannot be held liable to plaintiff as a matter of law, because the subcontract provides that "[r]eceipt of payment from the [government] to the

Contractor for [plaintiff's] work is an absolute condition precedent to the [plaintiff's] right to payment." (Doc. No. 42 at 8 (citing Doc. No. 41 Ex. 1 at 14).) Defendant asserts that, as the contractor's surety, it "is entitled to the benefit of the contractual requirements and affirmative defenses set forth in or based on" the subcontract between the contractor and plaintiff, including this "pay if paid" provision. (Id. at 7.)

In Weststar Engineering, a case involving similar facts, the Ninth Circuit rejected an almost identical argument. 290 F.3d at 1205. The defendants in that case contended that they could rely on an unsatisfied "pay if paid" provision as a defense to liability on a Miller Act payment bond. Id. However, the court held that "the liability of a surety and its principal on a Miller Act payment bond is coextensive with the contractual liability of the principal *only* to the extent that it is consistent with the rights and obligations created under the Miller Act." Id. at 1206 (emphasis added). In applying that principle to the case before it, the court held that

> [a] subcontractor's right of recovery on a Miller Act payment bond accrues ninety days after the subcontractor has completed its work, not "when and if" the prime contractor is paid by the government. Permitting a Miller Act surety to avoid liability on the payment bond based on an unsatisfied "pay when and if paid" clause in the subcontract would, for all practical purposes, prohibit a subcontractor from exercising its Miller Act rights until the prime contractor has been paid by the government. In cases where the

> government does not pay the prime contractor
> within the one year statute of limitations
> period, the subcontractor would be barred from
> asserting its Miller Act rights.

Id. at 1208; see also U.S. ex rel. T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Tex., 942 F.2d 946, 949 n.6 (5th Cir. 1991) ("[T]he "pay-when-paid" clause in the Subcontract does not preclude [the subcontractor's] recovery on its contract work and change order claim because under the Miller Act, the liability of the contractor is to the subcontractor, despite non-payment by the government to the contractor.") Thus, because "pay if paid" provisions are inconsistent with the rights and obligations created by the Miller Act, they cannot be raised as a defense by the surety.

In this case, defendant's argument is practically indistinguishable from that of the defendants in Weststar Engineering. Defendant claims that, as the contractor's surety, it can avoid liability because the subcontract provides that plaintiff will not be paid unless and until the contractor receives payment from the government. (Doc. No. 42 at 7.) In support of its argument, defendant cites a West Virginia Supreme Court of Appeals case, which held that "a pay-if-paid clause which prevents a subcontractor from proceeding against a contractor in the absence of the owner's payment to the contractor, also prevents the subcontractor from proceeding against the contractor's surety under a payment bond acquired by

the contractor pursuant to W. Va. Code § 38-2-39 (2004)."
<u>Wellington Power Corp.</u>, 614 S.E.2d 680, at syl. pt. 5. However, that case involves a West Virginia statute, rather than the Miller Act.

Because this court must apply federal law in construing the Miller Act, it shall not apply the holding in <u>Wellington Power Corporation</u> to this case. Instead, because the Miller Act "conditions payment of the subcontractor not on payment by the government to the contractor, but rather on the passage of time from completion of the work or provision of materials," <u>T.M.S. Mech. Contractors</u>, 942 F.2d at 949 n.6, the court must deny defendant's motion for summary judgment on the basis of the "pay if paid" provision in the subcontract.

### B. Whether Plaintiff's Claims Should Have Been Brought Against the Government

As stated above, defendant also claims that it is entitled to judgment as a matter of law because plaintiff should have asserted its claims against the government, not the contractor, because it was the government that refused to pay for the additional work. (Doc. No. 42 at 9-10.) According to defendant, the subcontract provides that the contractor "serves only as a conduit mechanism for [plaintiff] to assert [its] claims directly against" the government. (<u>Id.</u> (citing Doc. No. 41 Ex. 1 at 17).) Defendant further asserts that plaintiff agreed in the subcontract to submit its claims against the government in

-10-

accordance with the provisions of the prime contract, which adopted the dispute resolution provisions contained in the Federal Acquisition Regulations. (Id. at 10.) Defendant states that because plaintiff failed to submit its claims against the government in accordance with the Federal Acquisition Regulations, it cannot assert those claims against defendant. (Id.)

The Fourth Circuit rejected an argument similar to defendant's in U.S. ex rel. B's Co. v. Cleveland Electric Co. of S.C., where a contractor contended that its subcontractor was obligated to perform extra work demanded by the government and pursue payment for that work directly from the government. 373 F.2d 585 (4th Cir. 1967). In that case, the court stated:

> It is true that the terms of the subcontract stated that the subcontractor was bound by the terms of the prime contract and that it assumed the prime contractor's obligations to the Government insofar as applicable to the work performed by the subcontractor, but this identical language has been held, and we think properly, not to require the subcontractor to pursue the administrative remedies given the prime contractor in the disputes article.

Id. at 588 (citing Cent. Steel Erection Co. v. Will, 304 F.2d 548 (9th Cir. 1962); Fanderlik-Locke Co. v. U.S. ex rel. Morgan, 285 F.2d 939 (10th Cir. 1960), cert. denied, 365 U.S. 860 (1961)). The court reasoned that under the Miller Act, "[t]he Government does not recognize or deal with the subcontractor and owes no obligation to him for the work he performs." Id. (citing United

States v. Blair, 321 U.S. 730 (1944); United States v. Driscoll, 96 U.S. 421 (1877)); see also Warrior Constructors, Inc. v. Harders, Inc., 387 F.2d 727, 729 (5th Cir. 1967) ("Since there is no contract, express or implied, between a subcontractor and the government, there is no procedure by which the claim of a subcontractor can be presented against the United States except as it may become a claim of the prime contractor.")

Based on the record before the court, it does not appear that *the government* was a party to the subcontract or that *the government* has consented to plaintiff bringing claims against it, either pursuant to the dispute resolution provisions contained in the Federal Acquisition Regulations or otherwise. See United States v. Johnson Controls, Inc., 713 F.2d 1541 (Fed. Cir. 1983) (holding that a subcontractor could not bring a direct appeal against the government before the Board of Contract Appeals when there was no contractual provision in the prime contract providing that the government was directly liable to a subcontractor for goods or services supplied to the contractor). The purpose behind the Miller Act is to protect subcontractors *precisely* because they generally have no remedy against the government. See e.g., Sherman, 353 U.S. at 216. Plaintiff's only remedy in this case is to file suit under the Miller Act, which it has done. Therefore, the court must deny defendant's

motion for summary judgment on the basis that plaintiff should have pursued its claims against the government.

### IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is hereby **DENIED**. (Doc. No. 41.)

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to all counsel of record.

It is SO ORDERED this 12th day of July, 2007.

ENTER:

*David A. Faber* (signature)

David A. Faber
United States District Judge